UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

RALPH L. BALLARD III, individually, and in
his capacity as Seller Representative under
a certain Purchase Agreement,

             Plaintiff,          06 Civ. 13099 (RWS)

    -against-

                                                OPINION

PARKSTONE ENERGY, LLC, formerly known
as AMG ACQUISITION, LLC,

             Defendant.

------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/19/08

Attorneys for Plaintiff

BROWN RUDNICK BERLACK ISRAELS LLP
Seven Times Square
New York, NY 10036
By:  David J. Molton, Esq.
     Peter Adelman, Esq.


Attorneys for Defendant

FROST BROWN TODD LLC
250 W. Main Street, Suite 2700
Lexington, KY 40507
By:  Denise H. McClelland, Esq.

Peter M. Levine, Esq.
488 Madison Avenue, 19th Floor
New York, NY 10022

**Sweet, D.J.,**

Defendant Parkstone Energy, LLC ("Parkstone" or the "Defendant") has moved, pursuant to Local Rule 56.1, for reconsideration of this Court's November 27, 2007, opinion denying the parties' cross-motions for summary judgment (the "November 27th Opinion"). Ballard v. Parkstone Energy, LLC, 522 F. Supp. 2d 695 (S.D.N.Y. 2007). By separate motion, Parkstone has requested leave to file an amended answer and counterclaim in this action, pursuant to Fed. R. Civ. P. 15(a). For the reasons set forth below, Parkstone's motion for reargument is denied, and its motion to amend is granted.

**Facts and Prior Proceedings**

The parties' familiarity with the facts and prior proceedings in this action is assumed. In brief, this litigation arises out of an October 2005 agreement (the "Purchase Agreement") between the parties under which Parkstone, then known as AMG Acquisition, LLC, bought for $42 million six companies in the business of operating coal mining washing and loading facilities and selling and brokering coal products in West Virginia (the "Companies"). Plaintiff Ralph L. Ballard III ("Ballard" or the "Plaintiff") was the Seller Representative for

1

the Companies.  The Purchase Agreement contained a holdback provision of $2 million to provide for an adjustment for Closing Working Capital Statement, and it is that adjustment which is at the center of this dispute.

Parkstone's motion for reargument was marked fully submitted on January 8, 2008.  Parkstone's motion to amend was marked fully submitted on January 30, 2008.

**Parkstone's Motion for Reconsideration is Denied**

To prevail on a motion for reconsideration, "the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003).  Alternatively, "[r]econsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." Id. (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 965 F.2d 1245, 1255 (2d Cir. 1992)).  A motion for reconsideration "is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in

2

connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." Id. (citation omitted). Therefore, "Local Rule 6.3 is to be narrowly construed and strictly applied in order to avoid repetitive arguments on issues that the court has fully considered." Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002).

In support of its motion, Parkstone argues that the Court committed an error of law by engaging in "credibility assessments and issue-determination" in its November 27th Opinion. See Def.'s Rep. Mem. in Supp. at 1. In that Opinion, in an attempt to "clarify the issues and . . . to encourage the parties to reach a practical commercial resolution of their dispute rather than to continue the extensive litigation," Ballard, 522 F. Supp. at 697, the Court highlighted the central material factual dispute, namely, whether or not that Closing Working Capital Statement delivered by Byrd White was authorized. In addition, the Court explained that Parkstone had failed to establish, inter alia, that the Purchase Agreement was modified by the parties' conduct, that Ballard had failed to abide by the terms of the Purchase Agreement, and that the arbitration clause had been triggered. However, the Court did not issue an order pursuant to Fed. R. Civ. P. 56(d)

establishing facts, nor did it issue any order granting partial summary judgment to either side based on any of those findings. Therefore, Parkstone's instant motion essentially seeks to challenge the Court's interpretation of the evidence, and its conclusion that Parkstone had failed to establish its entitlement to summary judgment.

While Parkstone may disagree with the Court's assessment of the evidence, in the absence of any indication that the Court overlooked any controlling law or factual matters, Parkstone's motion is denied. See In re Houbigant, Inc., 914 F.Supp. 997, 1001 (S.D.N.Y. 1996) ("A Rule 3(j) [the predecessor to Local Rule 6.3] motion is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.").

**Parkstone's Motion to Amend is Granted**

Parkstone seeks to file an amended answer and counterclaim asserting nine additional affirmative defenses, as well as counterclaims based upon Ballard's alleged indemnity obligations under the Purchase Agreement. According to Parkstone, pursuant to Section 9.2 of the Purchase Agreement, Ballard is obligated to indemnify Parkstone for any and all

4

losses exceeding $100,000 and up to an aggregate $20,000,000 arising out of or related to: (i) any inaccuracy of representation or breach of any warranty of any of the sellers in the Purchase Agreement; (ii) any breach of any covenant, undertaking or other agreement of any seller contained in the Purchase Agreement; (iii) any and all pre-closing taxes and all related liabilities, costs and expenses; and (iv) any losses relating to retained liabilities.

In its proposed amended answer and counterclaims, Parkstone seeks enforcement of Ballard's alleged indemnification obligations, arguing that Ballard breached certain representations, warranties, covenants and/or agreements relating to the Companies' financial statements by failing to pay production royalty payables in the ordinary course of business, failing to pay accounts payable in the ordinary course of business, and offering Parkstone inaccurate reports of accounts and notes payable. Am. Ans. and Countercls. ¶¶ 23-24. Parkstone further alleges that it is entitled to indemnification for losses pertaining to the "Blair lawsuit" and West Virginia tax obligations. Parkstone also asserts a claim for breach of contract, alleging that it has provided proper notice and made proper demand for indemnity, and Ballard has refused to comply, thereby causing damages to Parkstone, "including the failure to

receive all the assets purchased and/or incurring obligations for undisclosed or increased Liabilities." Am. Ans. and Countercls. ¶ 55.

Ballard opposes Parkstone's motion to amend, arguing that a number of the affirmative defenses contained in the proposed amended answer and counterclaims were rejected by the Court in its November 27th Opinion, that the indemnity counterclaims are futile, that Parkstone, acting in bad faith, has intentionally delayed filing a motion to amend, and that permitting Parkstone to amend its answer and counterclaims would cause undue prejudice to Ballard. Ballard further asserts that through correspondence to Parkstone by his counsel, he has acknowledged his obligations to indemnify Parkstone for damages resulting from the Blair lawsuit and the West Virginia tax obligations, and Parkstone should not be permitted to amend its answer and counterclaims to include these claims.

A. *Rule 15 Standard*

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) ("Although Rule 15 requires that leave to amend be 'freely given,' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive.").

i. *Futility*

The party opposing a motion to amend bears the burden of establishing that an amendment would be futile. See Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing Harrison v. NBD Inc., 990 F. Supp. 179, 185 (E.D.N.Y. 1998)). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)); see also A.V. By Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 298 (S.D.N.Y. 2000) (explaining that if the proposed amendment "would be subject to immediate dismissal for failure to state a claim or on some other ground, the Court will

7

not permit the amendment") (quotation marks and citation omitted). Therefore, "[f]or the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)).

Ballard asserts that the indemnity claims would be futile as a result of Parkstone's alleged failure to timely provide proper notice of its claims before the November 21, 2007, as required by Section 9.4(a) of the Purchase Agreement. While Parkstone asserts that a letter sent by its counsel to Ballard on November 16, 2007, constituted the required notice, Ballard argues that the letter was lacked the "reasonable detail" required under Section 9.4(a) and asserts that Parkstone's counsel acknowledged this deficiency by stating in a subsequent letter to Ballard, dated December 7, 2007, that "additional factual information and reasonable detail [would] be provided shortly." See Decl. of Peter Adelman Exs. 2, 5. Parkstone replies that its promise to provide "additional" detail was not a concession of the deficiency of its purported notice.

8

Ballard further asserts that Parkstone's indemnity claims, other than those regarding the Blair lawsuit and the West Virginia tax obligations, would be futile on the basis that Parkstone did not suffer any "losses" as a result of the indemnifiable events, as required under Section 9.2 of the Purchase Agreement.

The issues of whether or not the November 16, 2007, letter constituted notice under Section 9.4(a) of the Purchase Agreement and whether Parkstone suffered any losses as a result of the alleged breaches of representations and warranties in the Purchase Agreement both involve questions of fact that cannot be resolved on this motion. As the Court is required to accept the pleaded allegations as true in considering this motion, it cannot say that the indemnity claims, on their face, are futile.

In addition, to the extent that Ballard argues that Parkstone should not be permitted to plead counterclaims related to the Blair lawsuit and West Virginia tax obligations because Ballard does not dispute his obligation to indemnify Parkstone for these liabilities, and, in fact, "acknowledged responsibility" for these liabilities in a November 26, 2007, letter to Parkstone, see Pl.'s Mem. in Opp. at 19-21, that argument is rejected. If and when Ballard indemnifies Parkstone

9

for these liabilities and the parties enter into a stipulation that the issue has been resolved, the relevant counterclaims may be dismissed.

  *ii. Undue Delay and Bad Faith*

  Ballard asserts that Parkstone has unduly delayed in filing this motion, as Parkstone has had access to the financial records underlying its claims since at least November 2005, and Parkstone concedes that it was aware its indemnity claims by May 2007. According to Ballard, Parkstone delayed for the purpose of waiting for the Court's summary judgment opinion, in the hopes that the Court would adopt Parkstone's position that this case should be before an arbitrator rather than this Court.

  Parkstone states it did not discover the facts underlying these new indemnity claims until after the filing of the original answer and counterclaims and the cross-motions for summary judgment. The complaint in the "New Blair Lawsuit" currently at issue was not filed until November 7, 2007, and, according to Parkstone, it did not discover the alleged "significant accounting errors, omission, misrepresentations and breaches by Ballard" giving rise to its additional indemnity

claims until May 2007, when its audit of the 2006 financial statements of the Companies' was completed.

"Mere delay provides an insufficient basis to deny a motion to amend absent a showing of bad faith or undue prejudice." ResQNet.com, Inc. v. Lansa, Inc., 382 F. Supp. 2d at 451 (citation omitted). Even if the Court were to assume that Parkstone was aware of the relevant facts at a date prior to the May 2007 close of its audit, amendment would not be properly denied on that basis alone, as "parties 'have been permitted to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims.'" ResQNet.com, 382 F. Supp. 2d at 450 (quoting Richardson Greenshields Secs., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases)). Moreover, here, the period between the filing of Parkstone's original answer in February 2007 and January 8, 2008, the date of its request to file an amended answer and counterclaim, is shorter than those periods in many cases in which amendments have been allowed. See, e.g., ResQNet.com, 382 F. Supp. 2d at 450-51 (granting leave to amend two-and-a-half years after initial amended answer and counterclaim filed); Richardson Greenshields, 825 F.3d at 652 n.6 (collecting cases).

11

Ballard further asserts that Parkstone is acting in bad faith by attempting to replead defenses already rejected by the Court in its November 27th Opinion. However, as the Court denied summary judgment to both parties in its November 27th Opinion and did not, therefore, issue final judgment on any of the parties' claims, Parkstone will be permitted to file its proposed amended affirmative defenses.

    *iii. Undue Prejudice*

To determine whether there would be undue prejudice from a proposed amendment, a court must consider whether the new aspects of the proposed pleading would "'(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citation omitted).

In asserting that it will suffer undue prejudice if Parkstone's motion is granted, Ballard again argues that Parkstone unnecessarily delayed in bring in this motion and was well aware of its proposed claims months before it filed its initial pleadings. As noted above, delay alone typically provides an insufficient basis for denying a motion to amend. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000); Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995) (citing State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)). Moreover, while Ballard states that he "has not been afforded the opportunity to take any discovery whatsoever as to Parkstone's proposed indemnification claims or its new affirmative defenses," Pl.'s Mem. in Opp. at 18, "'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" Bridgeport Music, Inc. v. UMG Recordings, Inc., No. 05 Civ. 6430 (JCF), 2008 U.S. Dist. LEXIS 1465 (S.D.N.Y. Jan. 10, 2008), at *15 (quoting United States v. Continental Illinois National Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989)).

Discovery in this case is still ongoing and did not commence until after this Court issued its November 27th Opinion. Ballard has offered no arguments or evidence

13

establishing that the addition of Parkstone's proposed defenses and counterclaims will require Ballard to expend significant additional resources conducting discovery or preparing for trial, or will significantly delay resolution of the dispute.

**Conclusion**

For the reasons set forth above, Parkstone's motion for reconsideration is denied and its motion to amend is granted.

It is so ordered.

**New York, N.Y.
September 19, 2008**

*[signature]*
ROBERT W. SWEET
U.S.D.J.