UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

RALPH L. BALLARD III, individually,
and in his capacity as Seller
Representative under a certain Purchase
Agreement,

                Plaintiff,              06 Civ. 13099 (RWS)

   -against-                               OPINION

PARKSTONE ENERGY, LLC, formerly known
as AMG ACQUISITION, LLC,

                Defendant.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        BROWN RUDNICK LLP
        Seven Times Square
        New York, NY 10036
        By:  David J. Molton, Esq.
             Peter Adelman, Esq.

        -and-

        THE SEGAL LAW FIRM
        810 Kanawha Boulevard, East
        Charleston, WV 25301
        By:  Scott Segal, Esq.
             Mark Staun, Esq.


        Attorneys for Defendant

        FROST BROWN TODD LLC
        250 W. Main Street, Suite 2700
        Lexington, KY 40507

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/09

By:  Denise H. McClelland, Esq.

-and-

PETER M. LEVING, ESQ.
420 Lexington Avenue, Suite 2620
New York, NY 10170

**Sweet, D.J.**

Plaintiff Ralph L. Ballard III ("Ballard" or the "Plaintiff") has moved pursuant to Rule 56, Fed. R. Civ. P., for partial summary judgment (i) dismissing the fourth and fifth counterclaims and fourteenth and fifteenth affirmative defenses of defendant Parkstone Energy, LLC, f/k/a AMG Acquisition LLC ("Parkstone" or the "Defendant") alleging indemnity and breach of contract; and (ii) dismissing Defendant's first, second and third counterclaims and its first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, and thirteenth affirmative defenses.

On the facts and conclusions set forth below, the motion is granted in part and denied in part.

## I. PRIOR PROCEEDINGS

The Court's opinions of November 27, 2007 (the "November 27 Opinion"), and September 19, 2008 (the "September 19 Opinion"), familiarity with both of which is assumed, described the proceedings in this action and that recital is not repeated here. See Ballard v. Parkstone,

1

No. 06 Civ. 13099 (RWS), 2008 WL 4298572 (S.D.N.Y. Sept. 19, 2008); Ballard v. Parkstone Energy, LLC, 522 F. Supp. 2d 695 (S.D.N.Y. 2007).

The September 19 Opinion granted Parkstone leave to file its Amended Answer and Amended Counterclaim, which Defendant filed on September 22, 2008. On October 6, 2008, Ballard filed its Answer to Amended Counterclaims to First Amended Complaint. The parties completed discovery on December 19, 2008.

The instant motion was heard and marked fully submitted on March 18, 2009.

## II. THE FACTS

The facts with respect to Parkstone's fourth and fifth counterclaims and fourteenth and fifteenth affirmative defenses have been set forth in Ballard's Statement Pursuant to Rule 56.1 and Parkstone's Response and from previously submitted statements and affidavits and are not disputed except as noted below. With respect to Plaintiff's motion seeking dismissal of Defendant's first, second and third counterclaims and its first, second,

third, fourth, sixth, seventh, eighth, ninth, tenth, and thirteenth affirmative defenses, the November 17 Opinion discussed the relevant facts at length, and they are not repeated here.

The parties to this action entered into an agreement in October 2005 (the "Purchase Agreement"), which provided for the purchase by Parkstone of six companies in the business of operating coal mining washing and loading facilities and selling and brokering coal products in West Virginia.

In November 2007, counsel for Parkstone, Denise McClelland ("McClelland"), sent a letter to Ballard and E. Forrest Jones, Jr., Esq. ("Jones"), Ballard's counsel, stating notice of certain indemnification claims under the Purchase Agreement (the "Indemnification Claims") on behalf of Parkstone (the "November 16, 2007 Letter").

Jones responded with a November 26, 2007 letter (the "November 26, 2007 Letter") to McClelland and Warren B. Hoffman, Esq., on behalf of Ballard stating, inter alia, that Ballard denied liability for the Indemnification Claims under §§ 9.1(a)(i) and (ii) of the Purchase

3

Agreement because Parkstone's notice of those Indemnification Claims lacked the "reasonable detail" expressly required by the terms of the Purchase Agreement and therefore was ineffective.[1]

McClelland sent a December 7, 2007 letter (the "December 7, 2007 Letter") to Jones on behalf of Parkstone in response, stating that "additional factual information and reasonable detail" would shortly be provided to Ballard with respect to the Indemnification Claims Defendant purported to bring under §§ 9.2(a)(1) and (2) of the Purchase Agreement. Decl. of Peter Adelman and Request for Judicial Notice of Previous Court Filings ("Adelman Decl."), Ex. 6.

McClelland then sent a December 20, 2007 letter (the "December 20, 2007 Letter") to Jones on behalf of Parkstone, which provided additional details related to Defendant's Indemnification Claims, pursuant to the promise in the December 7, 2007 Letter.

Section 9.1 of the Purchase Agreement provides,

---

[1] By contrast, the November 26, 2007 Letter acknowledged Ballard's obligations to indemnify Parkstone for damages resulting from the "Blair lawsuit" and West Virginia tax obligations pursuant to §§ 9.1(a)(iii) and (iv).

4

in pertinent part:

> 9.1 <u>Time Limitations on Indemnification</u>. The representations, warranties, covenants, undertakings and agreements of the parties made pursuant to this Agreement or in any instrument delivered pursuant hereto, and the rights of the parties to seek indemnification with respect thereto, shall survive the Closing; <u>provided, however</u>, that, except in respect of any claims for indemnification as to which written notice shall have been duly given to the Indemnifying Party (as hereinafter defined) pursuant to Section 9.4 hereof prior to the relevant expiration date set forth below, and subject to the remaining provisions of this Article IX, such representations, warranties, covenants, undertakings and agreements, and the rights of the parties to seek indemnification with respect thereto, shall expire on the following dates (each, an "**Indemnity Termination Date**").

<u>Id.</u>, Ex. 3 (emphasis in original).

Section 9.1(d) of the Purchase Agreement provides:

> (d) in the case of all other claims for indemnification arising under this Agreement or under any instrument delivered pursuant hereto, on the second (2nd) anniversary of the Closing Date [i.e., November 21, 2007].

<u>Id</u>. Section 9.1 further provides that:

> Any claim for indemnification under this

5

Agreement which is made in good faith and in writing prior to the expiration of such claim on the Indemnity Termination Date shall survive such expiration until mutually resolved or otherwise determined hereunder, as applicable, and the Indemnity Termination Date for all purposes hereunder shall automatically be extended with respect to such claim (but not any other claims) until such claim is so mutually resolved or otherwise determined hereunder.  Any such claim not so made in writing prior to the expiration of such claim on the relevant Indemnity Termination Date shall be deemed to have been waived.

Section 9.2(a) of the Purchase Agreement provides in pertinent part:

### 9.2 Indemnification of the Buyer by the Ballard Group

(a) Subject to the limitations set forth in this Article IX, each member of the Ballard Group, jointly and severally, agrees to indemnify, defend and hold the Buyer and its Affiliates and their respective officers, directors, partners, members, stockholders, employees, agents, representatives, successors and permitted assigns (collectively, the "**Buyer Indemnitees**"), harmless from and in respect of any and all Losses that they may incur arising out of or related to:

(i) any inaccuracy of any representation or the breach of any warranty of any of the Sellers contained in this Agreement;

(ii) any breach of any covenant, undertaking or other agreement of any Seller contained in this Agreement;

(iii) any and all Pre-Closing Taxes and all related Liabilities, costs and expenses (including reasonable investigation expenses and

6

> reasonable attorneys' fees and expenses) arising out of or incident to the imposition, assessment or assertion of any such Taxes; and
>
> (iv) any Losses relating to the Excluded Assets or Retained Liabilities.

Id.

> Pursuant to § 9.4:
>
> 9.4  Notice and Opportunity to Defend.
>
> (a)  If there occurs an event which a party (an "**Indemnified Party**") asserts is an indemnifiable event pursuant to Section 9.2 or 9.3, respectively, the Indemnified Party shall provide the other party obligated to provide indemnification (an "**Indemnifying Party**") promptly with written notice thereof, which notice shall describe in reasonable detail the basis for the Indemnified Party's claim for indemnification.

Id.

### III.  THE SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

For the purposes of summary judgment, "[a] fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law' . . . [and an] issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), as to every element "essential to that party's case, and on which that party

8

will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation and citation omitted).

## IV. DISCUSSION

### A. Defendant's Fourth and Fifth Counterclaims Are Dismissed in Part

According to Ballard, Parkstone's fourth and fifth counterclaims must be dismissed because they have expired, lapsed and been waived. Read together, §§ 9.1(d) and 9.4(a) of the Purchase Agreement require that Parkstone provide Ballard with written notice

9

containing "reasonable detail" of the purportedly indemnifiable events on or before the second anniversary of the Closing Date, November 21, 2007. Construing the contractual language according to its plain meaning as the Court is required to do, see Markovits v. Venture Capital, Inc., 129 F. Supp. 2d 647, 654 (S.D.N.Y. 2001), Parkstone was required to provide Ballard with written notice containing "reasonable detail" of the basis for its indemnification claims against Ballard before November 21, 2007. Section 9.1 explicitly provides that "[a]ny such claim not so made in writing prior to the expiration of such claim on the relevant Indemnity Termination Date shall be deemed to have been waived." Adelman Decl., Ex. 3 at §§ 9.1(d). Because the November 16, 2007 Letter failed to provide such "reasonable detail," Defendant's indemnification claims under §§ 9.2(a)(i) and (ii) of the Purchase Agreement have been waived.

According to Parkstone, the November 16, 2007 Letter provided Ballard with the requisite "reasonable detail" because it informed him of the specific provisions of the Purchase Agreement

10

purported to be violated and because Ballard was already on notice of the specific facts underlying its claims. However, with respect to its claims under §§ 9.2(a)(i) and (ii), Parkstone failed as a matter of law to provide Ballard with sufficient "reasonable detail" to satisfy the notice provision under the explicit terms of the Purchase Agreement.[2] Compare Stena Line (U.K.) Ltd. v. Sea Containers Ltd., 758 F. Supp. 934, 936-38 (S.D.N.Y. 1991) (holding that where contract gave sixty days for objecting party to formally dispute balance sheet, letter stating that party did "not agree or in any way concede" that balance sheet "was prepared in accordance with the terms" of the agreement did not satisfy notice requirement), with Wayrol PLC v. Ameritech Corp., No. 98 Civ. 8451 (DC), 1999 WL 259512 (S.D.N.Y. Apr. 30, 1999) (finding requirements of a "reasonable detail" notice provision satisfied where buyer had provided timely notice in the form of five separate letters which cited specific contractual provisions and described specific projects said to underlie the purported breaches as well as the dollar amounts at

---

[2] By contrast, Parkstone provided greater detail in the November 16, 2007 Letter as to its indemnification claims under §§ 9.2(a)(iii) and (iv).

11

issue in each claim).

Defendant contends that even if it did not provide "reasonable detail," summary judgment is not appropriate because Plaintiff has not demonstrated that it suffered any "prejudice" from its failure to timely notice Ballard of its indemnification claims. Section 9.4(a) of the Purchase Agreement provides:

> 9.4 Notice and Opportunity to Defend.
>
> (a) If there occurs an event which a party (an "Indemnified Party") asserts is an indemnifiable event pursuant to Section 9.2 or 9.3, respectively, the Indemnified Party shall provide the other party obligated to provide indemnification (an "Indemnifying Party") promptly with written notice thereof, which notice shall describe in reasonable detail the basis for the Indemnified Party's claim for indemnification.
>
> If such event involves (i) any claim or (ii) the commencement of any action or proceeding by a third Person (a "Third Party Claim"), the Indemnified Party will give such Indemnifying Party prompt written notice of such claim or the commencement of such action or proceeding, which notice shall describe in reasonable detail the basis for such claim or action to the extent then known by the Indemnified Party, but the failure to so notify the Indemnifying Party will not relieve the Indemnifying Party of any liability that it may have to any Indemnified Party, except to the extent that the Indemnifying Party demonstrates that the defense of such indemnifiable event is prejudiced by the Indemnified Party's failure to give such notice.

Adelman Decl., Ex. 3. Despite Defendant's arguments to the contrary, the clear and unambiguous language of the qualified notice provision of § 9.4(a) of the Purchase Agreement relates to the defense of a claim by a third party and not to claims asserted by Parkstone.

The cases cited by Parkstone in support of the "prejudice" requirement under New York law are easily distinguished as they concern contracts that contain generic "prompt notice" provisions, rather than explicit provisions such as the Purchase Agreement's two-year notice deadline. See Smurfit Newsprint Corp. v. Southeast Paper Mfg. Co., 368 F.3d 944, 952 (7th Cir. 2004) (applying New York's prejudice rule to generic prompt-notice provisions); Unigard Sec. Ins. Co. v. North River Ins. Co., 79 N.Y.2d 576, 578, (1992) (same). Here, the limited contractual prejudice requirement contained in the Purchase Agreement pertains solely to third-party claims and not to indemnification claims between the counter-parties to the Purchase Agreement. Therefore, Plaintiff is not required to show prejudice in order to assert that Defendant's indemnification claims have been waived.

13

Finally, Parkstone has contended that its fifth counterclaim, which asserts a breach of contract, is exempt from the Purchase Agreement's notice requirement. In its Amended Answer, Parkstone alleges liability based on "Ballard's refusal to accept his obligation to indemnify Parkstone, as the Indemnified Party, for the inaccuracies in the representations, warranties, covenants, undertakings and agreements made by Ballard." See Am. Answer & Am. Counterclaim ¶ 54; see also id. at ¶ 56 (seeking damages "incurred as a result of the Ballard [sic] and the Sellers' breach of contract in failing to fulfill their indemnity obligations arising from these failures"). Insofar as the breach of contract alleged by Defendant is premised on the same claim for indemnification and Plaintiff's refusal to indemnify Parkstone under §§ 9.1(a)(i) and (ii) of the Purchase Agreement, the fifth counterclaim is also dismissed.

While Plaintiff's motion for summary judgment is granted with respect to Defendant's fourth and fifth counterclaims under §§ 9.1(a)(i) and (ii), Parkstone has also asserted indemnification under §§ 9.1(a)(iii) and (iv) pertaining to the "Blair lawsuit" and West Virginia tax

14

obligations. Since Ballard has acknowledged his obligations to indemnify Parkstone for damages resulting from these actions and has not presented evidence of prejudice with respect to these third-party claims pursuant to § 9.4, the Court cannot grant summary judgment for Ballard with respect to the Blair lawsuit and the West Virginia taxes.

Accordingly, Parkstone's fourth and fifth counterclaims and fourteenth and fifteenth affirmative defenses are dismissed insofar as they are based on Ballard's failure to indemnity Parkstone pursuant to §§ 9.1(a)(i) and (ii) of the Purchase Agreement.

## B. The Issues for Trial Will Be Determined By the Pre-Trial Order

Ballard has relied on the November 27 Opinion in seeking to dismiss the First, Second and Third Counterclaims relating to the arbitration of a dispute over an adjustment of the Closing Working Capital Statement (the "Statement") and Parkstone's first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, and thirteenth affirmative defenses. The November 27 Opinion denied summary judgment to both parties based upon "a simple

15

dispute over a material fact," namely the authority of the president of Parkstone to submit the Statement on behalf of Defendant. November 27 Opinion at 697. Ballard contends that the Court's denial of summary judgment to Parkstone mandates dismissal of Parkstone's first two counterclaims, which assert declaratory judgment and specific performance claims relating to the arbitrability of the instant dispute, the third counterclaim, which seeks attorneys' costs, fees, and expenses in the event Defendant prevails, and the numerous affirmative defenses outlined above, certain of which repeat the positions which Parkstone sought to establish in its summary judgment.

The instant motion is not, however, an appropriate vehicle to narrow the trial issues except as noted above with respect to the indemnity claims. To the extent that the November 27 Opinion reached legal conclusions with respect to arbitration based on the facts then established, it remains the law of the case. See Brentwood Pain & Rehabilitation Servs., P.C. v. Allstate Ins. Co., 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007) ("Under the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation." (citing In re PCH Assocs., 949 F.2d 585, 592

16

(2d Cir. 1991))). To the extent that discovery has altered those facts or established additional facts, factual issues for trial may remain.

The parties will prepare a pretrial order on a schedule to be agreed upon for submission on November 18, 2009.

## V. CONCLUSION

The motion of Ballard for summary judgment to dismiss the fourth and fifth counterclaims is granted in part and otherwise is denied.

It is so ordered.

New York, NY
September 23, 2009

ROBERT W. SWEET
U.S.D.J.

17